Clk
5·22·19

KSC\MD: USAO#2015R0688

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

█████████████████████████

**JORGE RAUL GUERRA CASTILLO,**
    a.k.a. Pelon,
**CARLOS ALAS BRIZUELA,**
    a.k.a. Truco,
    a.k.a. Stewie,
█████████████████████████
**CARLOS HERNANDEZ DIAZ,**
    a.k.a. Positivo,
**MILTON PORTILLO RODRIGUEZ,**
    a.k.a. Little Gangster,
    a.k.a. Seco,
**JUAN CARLOS SANDOVAL RODRIGUEZ,**
    a.k.a. Picaro,
**FRANCISCO RAMIREZ PENA,**
    a.k.a. Tepo,
    a.k.a. Advertensia,
**JOSE ALBERTO SIBRIAN GARCIA,**
    a.k.a. Chango,
**DARWIN ARIAS MEJIA,**
    a.k.a. City,
    a.k.a. City Boy,
**DAVID ERNESTO NOLASCO SORIANO,**
    a.k.a. Gordo,
    a.k.a. Mole,
**MIGUEL LOPEZ ABREGO,**
    a.k.a. Timido,
**ALBARO ROSA MORENO,**
    a.k.a Slow,
**ERVIN ARRUE FIGUEROA,**
    a.k.a. Tricky,
**RONALD MENDEZ SOSA,**
**EDWIN RUIZ URRUTIA,**
    a.k.a. Sylvestre,
**BRENDA ARGUETA ARGUETA,**
    a.k.a Prima,

\*    **UNDER SEAL**

\*    **CRIMINAL NO. JKB-16-0259**
\*
\*    (Conspiracy to Participate in a
\*    Racketeering Enterprise, 18
\*    U.S.C. § 1962(d); Conspiracy to
\*    Commit a Violent Crime in Aid
\*    of Racketeering, 18 U.S.C. §
\*    1959(a)(6); Committing a
\*    Violent Crime in Aid of
\*    Racketeering, 18 U.S.C. §
\*    1959(a)(2), (3), 18 U.S.C. § 2;
\*    Conspiracy to Commit Money
\*    Laundering, 18 U.S.C.
\*    § 1956(h))

1

SAMUEL DIAZ RAMOS,                              *
    a.k.a. Pequeno,                              *
DARVIN GUERRA ZACARIAS,                     *
    a.k.a. Chapin,                               *
LUIS FERNANDO CRUZ RODRIGUEZ,       *
    a.k.a. Catra,                                *
AXEL RODRIGUEZ ARGUETA,                  *
    a.k.a. Dimaria,                              *
CARLOS VENTURA MORALES,                  *
    a.k.a. Pantalla,                             *
CHRISTIAN RODRIGUEZ  HERNANDEZ,      *
    a.k.a. Skinny,                               *
    and                                          *
DANNY HERNANDEZ SOLORZANO,              *
    a.k.a. Titre,                                *
                                                                     *

       Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FOURTH SUPERSEDING INDICTMENT

### COUNT ONE

#### (Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Fourth Superseding Indictment:

#### Introduction

1.    *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Anne Arundel County, Montgomery County, Prince George's County, and Frederick County, and throughout the United States.

2.    The name "Mara Salvatrucha" was a combination of several slang terms. The word "Mara" was the term used in El Salvador for "gang." The word "Salvatrucha" was a combination of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

2

3.      In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland.

4.      MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

5.      ███████████████ **GUERRA CASTILLO, ALAS BRIZUELA,** ███████ ████████**HERNANDEZ DIAZ, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ, RAMIREZ PENA, SIBRIAN GARCIA, ARIAS MEJIA, NOLASCO SORIANO, LOPEZ ABREGO, ROSA MORENO, ARRUE FIGUEROA, MENDEZ SOSA, RUIZ URRUTIA, ARGUETA ARGUETA, DIAZ RAMOS, RODRIGUEZ ARGUETA, VENTURA MORALES, RODRIGUEZ HERNANDEZ, HERNANDEZ SOLORZANO,** and others known and unknown to the Grand Jury, were members and associates of MS-13.

6.      Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying the phrase "*mi vida loca*," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered to conceal their gang affiliation from law enforcement.

3

7.     The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez" sneakers.  As with tattoos, some MS-13 members selected more discreet ways of dressing to signify their membership and at the same time avoid detection by law enforcement.

8.     MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

9.     Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons.  MS-13 members required that all individuals show respect and deference to the gang and its membership.  To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.  MS-13's creed was based on one of its mottos, "*Mata, viola, controlla*," which translated in sum and substance to, "Kill, rape, control," and, "*ver oir y callar*," which means, "see nothing, hear nothing and say nothing."

10.   ·  Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, drug trafficking, robbery, and extortion, as well as attempts and conspiracies to commit such offenses.  MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members.  Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to

4

a promotion to a leadership position. One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible. Rivals were often referred to as "*chavalas*." MS-13, in the areas of Frederick County, Anne Arundel County, Prince George's County and Montgomery County, Maryland, maintained rivalries with the 18th Street and Bloods gangs, among others.

11.    Prospective members who sought to join MS-13 were required to prove themselves over time. Individuals who associated with and were friends of the gang were called "*paisas*." Individuals who did favors and other acts for the gang were called "*paros*." Persons being observed by the gang for potential membership were known as "*observations*." Individuals who had advanced to the final level before being "jumped in" were called "*chequeos*." *Chequeos* underwent a probationary period during which they were required to commit additional, more serious crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12.    MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding areas these cliques included, among others, the Fulton Locos Salvatrucha ("FLS" or "Fulton"), Hempstead Locos Salvatrucha ("HLS" or "Hempstead"), Uniones Locotes Salvatrucha ("ULS"), Molinos Locotes Salvatrucha ("MLS"), Hollywood Locos

Salvatrucha ("HWLS"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Coronados Locos Salvatrucha ("CLS"), Parkview Locos Salvatrucha ("PVLS"), Guanacos Little Psychos Salvatrucha ("GLS"), and Langley Park Salvatrucha ("LPS").

13.     ███████████ GUERRA CASTILLO, ALAS BRIZUELA, ███████ ███████ HERNANDEZ DIAZ, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ, RAMIREZ PENA, SIBRIAN GARCIA, ARIAS MEJIA, NOLASCO SORIANO, LOPEZ ABREGO, ROSA MORENO, ARRUE FIGUEROA, MENDEZ SOSA, RUIZ URRUTIA, ARGUETA ARGUETA, DIAZ RAMOS, RODRIGUEZ ARGUETA, VENTURA MORALES, RODRIGUEZ HERNANDEZ, and HERNANDEZ SOLORZANO were members and associates of the Fulton or FLS Clique of MS-13. **ROSA MORENO** was a member and associate of the Parkview or PVLS Clique of MS-13.

14.     Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also sometimes referred to as "*Primera Palabra*," or "*Corredor*." The "Segundo Palabra," or "Second Word," was the second-in-command of the clique. General members were required to take orders from the First Word and Second Word. Clique leaders would often designate particular homeboys to take leadership positions over certain geographical areas.

15.     MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador. Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations

among local cliques.   Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

16.   MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence.   Each clique held clique meetings where business specific to that clique was discussed.   Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued.   Violations often took the form of beatings by fellow MS-13 members, often referred to as "court."   More serious violations resulted in the issuance of a "greenlight," which was an order and/or approval to kill.

17.   MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques.   Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

18.   MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses, as well as narcotics trafficking and the commission of robberies.   Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

19.   MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, social media such

as Facebook, e-mail accounts, and other modes of communication. Additionally, MS-13 members used international money wire transfers to conduct and promote gang activities.

### The Racketeering Enterprise

20. MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

21. The purposes of the MS-13 Enterprise included:

a. Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

b. Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, kidnapping, extortion, drug trafficking, robbery, money laundering, and other criminal activities;

c. Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

d. Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and in El Salvador;

e. Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

f.      Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity; from apprehending the perpetrators of those crimes; and from successfully prosecuting and punishing the offenders.

### Means and Methods of the Enterprise

22.    Among the means and methods by which the members and associates of MS-13 conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.      The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules;

b.      The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; identifying rival gang members and others for the purpose of assaulting or murdering them; efforts to increase gang income, through means such as drug trafficking and extortion; MS-13 leaders, members, and associates who had been arrested or incarcerated; disciplining MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes;

c.      The members and associates of MS-13 also communicated with other MS-13 members in Maryland and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, and posing

9

with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13;

d.      The members and associates of MS-13 financed the enterprise through a variety of activities, including the extortion of money – sometimes referred to as "rent" – from gang members and from legitimate and illegitimate businesses operating on the gang's turf, as well as through the commission of robberies;

e.      The members and associates of MS-13 distributed and agreed to distribute controlled substances on behalf of the gang;

f.      The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Maryland, and in El Salvador;

g.      The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members;

h.      The members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets; and

i.      The members and associates of MS-13 would and did agree that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

### The Racketeering Conspiracy

23.     Beginning on a date unknown to the Grand Jury, but at least prior to in or about

2015, and continuing through at least in or about 2017, in the District of Maryland and elsewhere,

████████████

**JORGE RAUL GUERRA CASTILLO,**
a.k.a. Pelon,
**CARLOS ALAS BRIZUELA,**
a.k.a. Truco,
a.k.a. Stewie,

████████████

**CARLOS HERNANDEZ DIAZ,**
a.k.a. Positivo,
**MILTON PORTILLO RODRIGUEZ,**
a.k.a. Little Gangster,
a.k.a. Seco,
**JUAN CARLOS SANDOVAL RODRIGUEZ,**
a.k.a. Picaro,
**FRANCISCO RAMIREZ PENA,**
a.k.a. Tepo,
a.k.a. Advertensia,
**JOSE ALBERTO SIBRIAN GARCIA,**
a.k.a. Chango,
**DARWIN ARIAS MEJIA,**
a.k.a. City,
a.k.a. City Boy,
**DAVID ERNESTO NOLASCO SORIANO,**
a.k.a. Gordo,
a.k.a. Mole,
**MIGUEL LOPEZ ABREGO,**
a.k.a. Timido,
**ALBARO ROSA MORENO,**
a.k.a Slow,
**ERVIN ARRUE FIGUEROA,**
a.k.a. Tricky,
**RONALD MENDEZ SOSA,**
**EDWIN RUIZ URRUTIA,**
a.k.a. Sylvestre,
**BRENDA ARGUETA ARGUETA,**
a.k.a Prima,
**SAMUEL DIAZ RAMOS,**
a.k.a. Pequeno,

11

**AXEL RODRIGUEZ ARGUETA,**
a.k.a. Dimaria,
**CARLOS VENTURA MORALES,**
a.k.a. Pantalla,
**CHRISTIAN RODRIGUEZ HERNANDEZ,**
a.k.a. Skinny, and
**DANNY HERNANDEZ SOLORZANO,**
a.k.a. Titre,

defendants herein, and others known and unknown to the Grand Jury, being persons employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly conspire to violate Title 18 U.S.C. § 1962(c), that is to conduct and participate, directly, and indirectly, in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of:

    (a)    Multiple acts involving:

        (1)    murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, 1-202, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206;

        (2)    extortion, in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, 1-202, and the Common Law of Maryland; and

        (3)    robbery, in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403, 1-202, and the Common Law of Maryland;

        (4)    kidnapping, in violation of Maryland Code, Criminal Law § 3-502, and the Common Law of Maryland.

    (b)    Multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841 and 846;

    (c)    Multiple acts indictable under:

        (1) 18 U.S.C. § 1951 (relating to interference with commerce, robbery or extortion); and

        (2) 18 U.S.C. §§ 1956 and 1957 (money laundering).

It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### Overt Acts

24.     In furtherance of the conspiracy, and to effect the illegal object thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

### 2015

25.     In 2015, these included the following activities:

a.      On or about April 7, 2015, **ALAS BRIZUELA** and other members and associates of MS-13 conspired to murder Victim 1 because Victim 1 was a suspected rival gang member.

b.      On or about April 7, 2015, members and associates of MS-13 murdered Victim 1 in Frederick, Maryland.

c.      Prior to the murder of Victim 1, **ALAS BRIZUELA** and **GUERRA CASTILLO** authorized and ordered the murder of Victim 1.

d.      In or about May 2015, **ALAS BRIZUELA, GUERRA CASTILLO, NOLASCO SORIANO,** and other members and associates of MS-13 conspired to kidnap and murder Victim 2.

e.      On or about May 10, 2015, **ALAS BRIZUELA, NOLASCO SORIANO,** and other members and associates of MS-13 kidnapped Victim 2 in Frederick, Maryland.

f.      During the kidnapping, members and associates of MS-13 attempted to extort Victim 2, threatening to kill Victim 2 if he did not pay money to the gang.

g.    During the kidnapping of Victim 2, **ALAS BRIZUELA** displayed a firearm and put the firearm in Victim 2's mouth.

h.    On or about August 28, 2015, **ALAS BRIZUELA,** ████████████ **GUERRA CASTILLO, NOLASCO SORIANO,** and other members and associates of MS-13, conspired to maim, assault with a dangerous weapon, and murder Victim 3.

i.    Prior to August 28, 2015, **ALAS BRIZUELA,** ████████████ **NOLASCO SORIANO,** and **DIAZ RAMOS** participated in giving another MS-13 member a "court" (i.e., a disciplinary beating) because Victim 3 had not yet been killed.

j.    On or about August 28, 2015, **NOLASCO SORIANO** and other members and associates of MS-13 repeatedly struck the Victim 3 with a machete and a knife and assaulted Victim 4 in Frederick, Maryland.

k.    Prior to the assault and attempted murder of Victim 3, members and associates of MS-13 spoke to **ALAS BRIZUELA,** ████████████ and **GUERRA CASTILLO,** who authorized the murder of Victim 3.

l.    On or about August 31, 2015, **ALAS BRIZUELA** and ████████████ murdered Victim 5 by stabbing him with a knife in Wheaton, Maryland.

m.    On or about December 23, 2015, **ALAS BRIZUELA,** ████████████ **RODRIGUEZ ARGUETA,** and other MS-13 members conspired to murder Victim 6.

n.    On or about December 23, 2015, members and associates of MS-13 attempted to murder Victim 6 by stabbing Victim 6 with a knife in Frederick, Maryland.

**2016**

**26.**    In 2016, these included the following activities:

14

a.  On or about March 26, 2016, **RODRIGUEZ HERNANDEZ** and other members and associates of MS-13 conspired to extort Victim 7 in Langley Park, Maryland.

b.  In or about early May 2016, **GUERRA CASTILLO, HERNANDEZ DIAZ,** and other members and associates of MS-13 conspired to murder Victim 8 in Frederick, Maryland.

c.  In or about May 2016, **HERNANDEZ DIAZ** traveled to Frederick, Maryland with a .38 caliber handgun to murder Victim 8.

d.  In or about June 2016, **SIBRIAN GARCIA** and **RAMIREZ PENA** were promoted to the *chequeo* rank in the Fulton clique of MS-13.

e.  In or about July 2016, **SIBRIAN GARCIA, HERNANDEZ DIAZ,** and other members and associates of MS-13 conspired to murder Victim 9.

f.  On or about July 4, 2016, **SIBRIAN GARCIA, HERNANDEZ DIAZ,** and other members and associates of MS-13 attempted to lure Victim 9 to Wheaton Regional Park for the purpose of killing him.

g.  On or about July 4, 2016, **SIBRIAN GARCIA, HERNANDEZ DIAZ,** and other members and associates of MS-13 dug a shallow grave in Wheaton Regional Park in which they intended to bury Victim 9 after killing him.

h.  On July 4, 2016, **SIBRIAN GARCIA, HERNANDEZ DIAZ,** and other members and associates of MS-13 attempted to murder Victim 9 by shooting him with a firearm in the head.

i.  On or about July 4, 2016, **SIBRIAN GARCIA, HERNANDEZ DIAZ,** and other members and associates contacted **GUERRA CASTILLO** to report the attempted murder of Victim 9.

j.      On or about August 28, 2016, **SIBRIAN GARCIA, HERNANDEZ DIAZ,** and other members and associates of MS-13 conspired to murder Victim 10 in Wheaton, Maryland.

k.      On or about August 28, 2016, **HERNANDEZ DIAZ** attempted to murder Victim 9 by shooting at him with a firearm several times, but failed to strike Victim 10.

l.      In or about August 2016, **HERNANDEZ DIAZ,** ▮▮▮▮▮▮▮▮▮▮ and other MS-13 gang members promoted **SIBRIAN GARCIA** and **RAMIREZ PENA** to the rank of homeboy in the Fulton clique of MS-13 by assaulting them in a ritual referred to as "jumping in."

m.      On or about December 14, 2016, **HERNANDEZ DIAZ, HERNANDEZ SOLORZANO,** and other members or associates of MS-13 conspired to murder Victim 11 and Victim 12.

n.      On or about December 14, 2016, **HERNANDEZ DIAZ, HERNANDEZ SOLORZANO,** and other members or associates of MS-13 retrieved a firearm and attempted to murder Victim 11 and Victim 12 by shooting them in Montgomery County, Maryland.

**2017**

27.     In 2017, these included the following activities:

a.      In or about March 2017, **LOPEZ ABREGO, ROSA MORENO, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ, SIBRIAN GARCIA,** and other members and associates of MS-13 conspired to murder Victim 13.

b.      On or about March 31, 2017, **LOPEZ ABREGO, ROSA MORENO, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ, SIBRIAN GARCIA,** and other members and associates of MS-13 lured Victim 13 to a park in Wheaton, Maryland for the purpose of murdering him.

     c.      On or about March 31, 2017, **LOPEZ ABREGO, ROSA MORENO, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ, SIBRIAN GARCIA**, and other members and associates of MS-13 murdered Victim 13 in Wheaton, Maryland by stabbing him over 100 times with sharp objects.

     d.      On or about March 31, 2017, **LOPEZ ABREGO, ROSA MORENO, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ, SIBRIAN GARCIA**, and other members and associates of MS-13 dismembered Victim 13, removed his heart, and buried him in a grave.

     e.      Following the murder of Victim 13 **HERNANDEZ DIAZ, RAMIREZ PENA**, and **SIBRIAN GARCIA** promoted **LOPEZ ABREGO** to the rank of *chequeo* in the Fulton clique of MS-13 for his participation in the murder of Victim 13.

     f.      On or about April 3, 2017, **HERNANDEZ DIAZ, ARIAS MEJIA, ROSA MORENO**, and other members and associates of MS-13 conspired to murder Victim 14.

     g.      On or about April 3, 2017, **HERNANDEZ DIAZ, ARIAS MEJIA, ROSA MORENO**, and other members and associates of MS-13 murdered Victim 14 by striking him with a hard object, hitting him with a machete, and dismembering him with sharp objects in Frederick, Maryland.

     h.      On or about April 3, 2017, **HERNANDEZ DIAZ, ARIAS MEJIA, ROSA MORENO**, and other members and associates of MS-13 buried the body of Victim 14 in a shallow grave in Frederick, Maryland.

     i.      On or about June 14, 2017, **ROSA MORENO, RUIZ URRUTIA, SIBRIAN GARCIA**, and other members and associates of MS-13 assaulted Victim 15 and Victim 16 in Wheaton, Maryland.

   j.  On or about June 14, 2017, an MS-13 member informed other MS-13 gang members that Victim 17, a suspected member of the 18th Street gang, was hanging out near a Dunkin Donuts in Wheaton, Maryland.

   k.  On or about June 14, 2017, **HERNANDEZ DIAZ, LOPEZ ABREGO, SIBRIAN GARCIA**, and other members and associates of MS-13 assaulted Victim 17 in Wheaton, Maryland.

   l.  In or about June, 2017, **GUERRA CASTILLO, PORTILLO RODRIGUEZ, RAMIREZ PENA, RUIZ URRUTIA, ARGUETA ARGUETA** and other members and associates of MS-13 conspired to murder Victim 18.

   m.  On or about June 24, 2017, **PORTILLO RODRIGUEZ, RAMIREZ PENA, RUIZ URRUTIA, ARGUETA ARGUETA**, and other members and associates of MS-13 kidnapped and transported Victim 18 to Crownsville, Maryland for the purpose of murdering her.

   n.  On or about June 24, 2017, **PORTILLO RODRIGUEZ, RAMIREZ PENA, RUIZ URRUTIA**, and other members and associates of MS-13 murdered Victim 18 in Crownsville, Maryland by strangling and dismembering her with machetes.

   o.  On or about June 24, 2017, **PORTILLO RODRIGUEZ, RAMIREZ PENA, RUIZ URRUTIA**, and other members and associates of MS-13 buried Victim 18 in a shallow grave in Crownsville, Maryland.

   p.  In or about July 2017, **HERNANDEZ DIAZ, ARIAS MEJIA**, and **RAMIREZ PENA** promoted **PORTILLO RODRIGUEZ** and **SANDOVAL RODRIGUEZ** to the rank of homeboy in the Fulton clique of MS-13 by assaulting them in a ritual referred to as "jumping in."

q.   Between in or about 2015, through on or about 2017, ███████ GUERRA CASTILLO, ALAS BRIZUELA, ███████ ARRUE FIGUEROA, HERNANDEZ DIAZ, LOPEZ ABREGO, MENDEZ SOSA, PORTILLO RODRIGUEZ, RAMIREZ PENA, RODRIGUEZ ARGUETA, RODRIGUEZ HERNANDEZ, VENTURA MORALES, SANDOVAL RODRIGUEZ, SIBRIAN GARCIA, DIAZ RAMOS, and other members and associates of MS-13 conspired to distribute marijuana to raise funds for MS-13 to purchase marijuana and weapons for the gang, and to send to MS-13 members and associates in Maryland, in other states, and in El Salvador.

r.   Between in or about 2015, through on or about 2017, **ALAS BRIZUELA,** ███████ **GUERRA CASTILLO,** ███████ **ARIAS MEJIA, PORTILLO RODRIGUEZ, RAMIREZ PENA, RODRIGUEZ ARGUETA, RODRIGUEZ HERNANDEZ, SANDOVAL RODRIGUEZ, SIBRIAN GARCIA, VENTURA MORALES, DIAZ RAMOS,** and other members and associates of MS-13 extorted money from victims by threatening and using force, violence, and fear.

s.   Between in or about 2015 through or about 2017, **DIAZ RAMOS** and other MS-13 members and associates sent money obtained from the extortion of the owners and operators of illegal businesses to El Salvador. Often the money was sent through females or non-MS-13 members to disguise the origin of the money as well as the purpose of the funds (which was to support MS-13 in El Salvador).

t.   Between in or about 2015, through on or about 2017, **DIAZ RAMOS,** and other MS-13 members possessed firearms on behalf of MS-13 and provided them to members and associates of MS-13 to use in the gang's activities.

u.      Between in or about 2015, through on or about 2017, **DIAZ RAMOS**, and other MS-13 members received and stored proceeds from MS-13's drug sales and extortions and would send the proceeds to MS-13 members and associates in Maryland, other states, and El Salvador.

## Special Sentencing Factors Regarding Count One

28.     On or about April 7, 2015, in the District of Maryland, **ALAS BRIZUELA** and **GUERRA CASTILLO** unlawfully conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 1, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

29.     On or about August 28, 2015, in the District of Maryland, **ALAS BRIZUELA**, ██████████████ **GUERRA CASTILLO**, and **NOLASCO SORIANO**, conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 3, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

30.     On or about August 31, 2015, in the District of Maryland, **ALAS BRIZUELA**, and ██████████████ conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 5, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

31.     On or about December 23, 2015, in the District of Maryland, **ALAS BRIZUELA**, **RODRIGUEZ ARGUETA**, and ██████████████ conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and

murder Victim 6, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

32.     On or about July 4, 2016 in the District of Maryland, **SIBRIAN GARCIA** and **HERNANDEZ DIAZ** conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 9, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

33.     On or about August 28, 2016 in the District of Maryland, **HERNANDEZ DIAZ** conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 10, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

34.     On or about March 31, 2017, in the District of Maryland, **LOPEZ ABREGO, ROSA MORENO, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ,** and **SIBRIAN GARCIA** unlawfully conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 13, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

35.     On or about April 3, 2017, in the District of Maryland, **HERNANDEZ DIAZ, ARIAS MEJIA,** and **ROSA MORENO** unlawfully conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 14, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

36.     On or about June 24, 2017, in the District of Maryland, **GUERRA CASTILLO,
ARGUETA ARGUETA, PORTILLO RODRIGUEZ, RAMIREZ PENA, SANDOVAL
RODRIGUEZ, ARRUE FIGUEROA, SOSA,** and **RUIZ URRUTIA** unlawfully conspired with
others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately
premeditated malice, kill and murder Victim 18, in violation of Maryland Code, Criminal Law
§ 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code,
Criminal Law § 1-202.

All in violation of 18 U.S.C. § 1962(d)

## COUNT TWO

**(Conspiracy to Murder, Maim, Assault with a Dangerous Weapon, and Assault Resulting
in Serious Bodily Injury in Aid of Racketeering)**

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1-22 of Count One of this Fourth Superseding Indictment are re-alleged
and incorporated by reference as though fully set forth herein.

2.     At all times relevant to this Fourth Superseding Indictment, MS-13, including its
leaders, members, and associates, constituted an enterprise, as defined in Title 18, United States
Code, Section 1959(b)(2), that is a group of individuals associated in fact that engaged in, and the
activities of which affected, interstate and foreign commerce. The enterprise constituted an
ongoing organization whose members functioned as a continuing unit for a common purpose of
achieving the objectives of the enterprise. A primary purpose of the enterprise was to earn money
for its members and associates through drug sales and extortion of local brothels and beer houses.

3.     The above-described enterprise, MS-13, through its members and associates,
engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1)
and 1961(1), namely, offenses involving narcotics trafficking in violation of Title 21, United States
Code, Sections 841 and 846, acts indictable under Section 1951 (extortion), of Title 18, United
States Code, and acts involving murder in violation of Maryland Code, Criminal Law § 2-201(a)(1)
and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law §
1-202, kidnapping in violation of Maryland Code, Criminal Law § 3-502, and the Common Law
of Maryland, and extortion in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, 1-
202, and the Common Law of Maryland.

4.      On or about August 28, 2015, in the State and District of Maryland and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity,

**DAVID ERNESTO NOLASCO SORIANO,**
**a.k.a. Gordo,**
**a.k.a. Molé,**

the defendant herein, and others known and unknown, unlawfully and knowingly conspired to murder, maim, assault with a dangerous weapon, and assault resulting in serious bodily injury, Victim 3, in violation of Maryland common law and Md. Code Ann. Crim. Law § 2-205 and § 3-202.

18 U.S.C. § 1959(a)(5) and (6)

## COUNT THREE

**(Attempted Murder, Maiming, and Assault with a Dangerous Weapon Resulting in Serious Bodily Injury in Aid of Racketeering)**

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1-3 of Count Two of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about August 28, 2015, in the State and District of Maryland, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity,

**DAVID ERNESTO NOLASCO SORIANO,**
**a.k.a. Gordo,**
**a.k.a. Mole,**

the defendant herein, unlawfully and knowingly attempted to murder, maimed, assaulted with a dangerous weapon, and assaulted resulting in the serious bodily injury, and aided and abetted the maiming, assault with a dangerous weapon, and assault resulting in serious bodily injury of Victim 3, in violation of Maryland common law and Md. Code Ann. Crim. Law § 2-205 and § 3-202.

18 U.S.C. §§ 1959(a)(2), (3), and (5)
18 U.S.C. § 2

## COUNT FOUR

### (Conspiracy to Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1-3 of Count Two of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      The defendants, **HERNANDEZ DIAZ, ARIAS MEJIA,** and **ROSA MORENO,** and **CRUZ RODRIGUEZ,** together with other persons, known and unknown to the grand jury, were members and associates of a criminal organization, that is the MS-13 street gang.  On or about April 3, 2017, in the State and District of Maryland and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity,

**CARLOS HERNANDEZ DIAZ,**
**a.k.a. Positivo,**
**DARWIN ARIAS MEJIA,**
**a.k.a. City,**
**a.k.a. City Boy,**
**ALBARO ROSA MORENO,**
**a.k.a Slow, and**
**LUIS FERNANDO CRUZ RODRIGUEZ,**
**a.k.a. Catra,**

the defendants herein, and others known and unknown, unlawfully and knowingly conspired to murder Victim 14, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

18 U.S.C. § 1959(a)(5)

## COUNT FIVE

### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1-3 of Count Two of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      The defendants, **GUERRA CASTILLO, PORTILLO RODRIGUEZ, SANDOVAL RODRIGUEZ, RAMIREZ PENA, ARRUE FIGUEROA, MENDEZ SOSA, RUIZ URRUTIA, ARGUETA ARGUETA, GUERRA ZACARIAS**, together with other persons, known and unknown to the grand jury, were members and associates of a criminal organization, that is the MS-13 street gang

3.      On or about June 24, 2017, in the State and District of Maryland and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity,

**JORGE RAUL GUERRA CASTILLO,**
a.k.a. Pelon,
**MILTON PORTILLO RODRIGUEZ,**
a.k.a. Little Gangster,
a.k.a. Seco,
**JUAN CARLOS SANDOVAL RODRIGUEZ,**
a.k.a. Picaro,
**FRANCISCO RAMIREZ PENA,**
a.k.a. Tepo,
a.k.a. Advertensia,
**ERVIN ARRUE FIGUEROA,**
a.k.a. Tricky,
**RONALD MENDEZ SOSA,**
**EDWIN RUIZ URRUTIA,**
a.k.a. Sylvestre,
**BRENDA ARGUETA ARGUETA,**
a.k.a Prima,
**DARVIN GUERRA ZACARIAS,**

27

**a.k.a. Chapin,**

the defendants herein, and others known and unknown, unlawfully and knowingly conspired to

murder Victim 18, in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common

Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

18 U.S.C. § 1959(a)(5)

## COUNT SIX

### (Conspiracy to Commit Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.     Beginning on a date unknown to the Grand Jury, but at least prior to in or about 2015, and continuing through at least in or about 2017, in the District of Maryland and elsewhere,

### SAMUEL DIAZ RAMOS,
#### a.k.a. Pequeno,

did knowingly combine, conspire, confederate, and agree with persons, known and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions having an effect on interstate commerce which involved the proceeds of specified unlawful activity—to wit, (1) conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846; (2) distribution of controlled substances, in violation of 21 U.S.C. § 841; and (3) interference with commerce by robbery or extortion, in violation of 18 U.S.C. § 1951—while knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

18 U.S.C. § 1956(h)

ROBERT K. HUR
United States Attorney

A TRUE BILL:

Foreperson        Date: 5/03/19